**MARION HAMM CREQUE, Plaintiff**

v.

**HARRIS CREQUE, Defendant**

v.

**IRENE GUMBS, Intervenor**

Family No. D237-1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 8, 1983

DESMOND L. MAYNARD, ESQ., St. Thomas, V.I., *for plaintiff*

HARRIS CREQUE, Los Angeles, California, U.S.A., *pro se*

JAMES HYMES, ESQ. (Grunert, Stout, Hymes & Smock), St. Thomas, V.I., *for intervenor*

HODGE, *Presiding Judge*

## OPINION

### I.

This case is before the court on plaintiff's motion for modification of the divorce decree, seeking one hundred percent (100%) interest in the marital homestead, in which a presumed fifty percent (50%) tenant-in-common interest of the defendant, the former husband, was sold and confirmed by the District Court to satisfy the intervenor's District Court judgment against him. In effect, the motion asks this court to disregard the judgment, sale, and confirming order of the District Court, and to award full title in the property to plaintiff.

Plaintiff contends (1) that the Territorial Court has exclusive jurisdiction to dispose of the property, (2) that the recording of the judgment lien while the property was owned as tenants-by-the-entirety renders both the lien and the execution sale invalid, (3) that the District Court's presumption of a 50% interest by defendant as a tenant-in-common is erroneous, and (4) that the execution sale also is invalid due to violation of the homestead exemption provision. The intervenor, of course, opposes each of these contentions.

For the reasons which follow, the court concludes (1) that the District Court has concurrent jurisdiction to dispose of the property, (2) that although the judgment lien is invalid, the execution sale is legal, (3) that the presumption of a 50% interest of defendant as a tenant-in-common is valid where the presumption has not been rebutted, and (4) that there has been no violation of the homestead exemption provision. Thus, plaintiff's motion for modification will only be granted in part to reflect her limited fifty percent interest in the property.

## II.

On February 19, 1981, this court issued a divorce decree terminating the marriage between plaintiff and defendant which was entered into on February 21, 1964. Since the separation of the Creques on July 2, 1976, plaintiff and their four children have occupied Parcel No. 155-4 Estate Anna's Retreat, the marital homestead, which was purchased by the Creques for $15,000.00 in 1967. The decree made no disposition of the homestead. Instead, it noted that upon the divorce they would own the property as tenants-in-common. The court did not determine the equities of the case, nor did it decide what percentage of ownership in common each held, but stated that any further disposition of the property was reserved for future determination by any court of competent jurisdiction. A similar reservation was made regarding the issue of alimony.

On October 17, 1978, prior to the divorce, intervenor Irene Gumbs (Gumbs) recovered a judgment in the District Court against the husband in the sum of $30,000.00, plus post-judgment interest, costs, and attorney's fees. Gumbs v. Creque, Civ. No. 76-80. Gumbs recorded that judgment as a lien against the homestead on October 27, 1978, at which time the Creques owned the property as tenants-by-the-entirety. Gumbs did not seek enforcement of that judgment lien until after the divorce, when the ownership of the property changed from tenants-by-the-entirety to tenants-in-common. About one month after the divorce, Gumbs requested the District Court to issue a writ of execution to enforce her judgment. The writ was issued on March 17, 1981, for the attachment and sale of the defendant's interest in the property, which the District Court considered to be one-half of the undivided common ownership. Ten days thereafter, plaintiff filed her motion in this court to modify the divorce decree, seeking an expeditious disposition of the homestead prior to the sale of the defendant's interest. Becoming aware of this maneuver, Gumbs moved to intervene in this action to oppose plaintiff's motion, and intervention was allowed. After this court's refusal to expedite the Territorial Court proceedings, plaintiff filed a motion to intervene in the District Court case, seeking a stay of enforcement of the Gumbs judgment. The District Court denied the motion, and on May 15, 1981, the defendant's interest in the property was sold to Gumbs at the execution sale for $36,525.00, the total of her judgment, plus interest, costs, and fees. Thereafter, on June 3, 1981, the District Court issued its order confirming the sale.

Having lost the District Court battle, plaintiff returned to the Territorial Court battlefield on June 8, 1981, by filing a supplemental motion to modify the divorce decree, supported by an affidavit of

defendant wherein he agreed to transfer his interest in the homestead to plaintiff in lieu of alimony. Using the defendant's affidavit of consent as a resolution of any remaining factual questions, plaintiff also filed a motion for summary judgment, claiming that she is entitled to a one hundred percent (100%) interest in the homestead as a matter of law, despite the impact of the District Court's judgment, execution, and sale. Thus the issues addressed herein were raised.

## III.

### A. *Subject Matter Jurisdiction*

Citing T. 33 V.I.C. § 2305, which authorizes disposition of the homestead in accordance with the equities of the case, plaintiff argues that the Territorial Court, as the divorce court, has exclusive jurisdiction to dispose of the homestead, except as to a separate action in equity or partition. Plaintiff, therefore, contends that the District Court's order confirming the sale of the homestead should be rendered invalid due to lack of subject matter jurisdiction. This contention is specious.

■■ Section 22 of the Revised Organic Act of 1954 (Act) confers upon the District Court general jurisdiction in all causes arising under the laws of the Virgin Islands, except those in which exclusive jurisdiction is vested in the local courts by the Act. Section 23 of the Act lists, among other things, the civil actions over which the local courts have exclusive jurisdiction, and they do not include divorce, equity, or partition cases. The cases of exclusive jurisdiction are reiterated in 4 V.I.C. § 75, but it is the Organic Act that is controlling. Hence, this court does not have exclusive jurisdiction over divorce cases or over disposition of the homestead; instead, the jurisdiction is concurrent with that of the District Court.

■■ Despite this fact, plaintiff's major premise and conclusion are inconsistent, for even if the District Court did not have jurisdiction to dispose of the homestead as the divorce court, it would still have jurisdiction to enforce its civil judgment by the execution sale of the property in accordance with 5 V.I.C. Ch. 43, regarding enforcement of judgments. Moreover, principles of comity require us to abstain from exercising our jurisdiction once the District Court has acted. See Bergin v. Bergin, 8 V.I. 336, 439 F.2d 1008 (3d Cir. 1971).

### B. *Judgment Lien and Execution Sale*

■■ The question of whether the interest of an individual spouse in real property held as a tenancy-by-the-entirety is subject to a lien for a judgment rendered solely against that spouse was

413

recently restated by the District Court in Bruckner v. Clarke, 1982 St. X. Supp. (D.V.I. 1982). There, it was again made clear that such an estate is not subject to attachment by the creditor of one spouse. Thus, it was held that where a debt is owed by one spouse, the creditor may neither sell, levy on, nor attach through a lien, property held as a tenancy-by-the-entirety. See Modeste v. Benjamin, 18 V.I. 619 (D.V.I. 1981); Masonry Products, Inc. v. Tees, 6 V.I. 108 (D.V.I. 1968). These cases clearly establish that 5 V.I.C. § 425 (1967) ed.), regarding the recordation of judgment liens against real property, does not apply to real property held as a tenancy-by-the-entirety, where the judgment is against one spouse only.

In applying the foregoing legal principle to the facts of this case, there is no question that the recordation of the intervenor's District Court judgment against the marital homestead on October 27, 1978, at a time when the Creques were married and held the property as tenants-by-the-entirety, was null and void. Thus, the judgment lien was invalid and could not be enforced against the property, whether by attachment, levy or sale. But this does not conclude the inquiry of the court, because despite the invalidity of the judgment lien, it must now be determined whether the execution sale of the property, at a time when it was owned by them as tenants-in-common, is nevertheless valid and enforceable.

We begin the inquiry by noting that 5 V.I.C. § 425 does not mandate the recording of a judgment in order for it to be enforceable. The use of the term "may" within § 425 makes it clear that a judgment creditor is granted a procedural privilege to protect his claim, but that he is not required to do so. And his refusal or failure to do so cannot invalidate an otherwise valid judgment. Indeed, subsection (d) of § 425 provides for the expiration of a judgment lien after ten years if no execution is issued, but the expiration applies only to the lien, not to the judgment per se, which has its own life-span of twenty years pursuant to 5 V.I.C. § 31(1)(B) (1967 ed.), and which may be enforced by execution within five years without leave of court, pursuant to 5 V.I.C. § 488. Thus, the recording of a judgment lien is not a prerequisite to an execution sale based upon a valid unrecorded judgment.

In this case, when the Creques were divorced on February 19, 1981, they became owners of the property as tenants-in-common. 28 V.I.C. § 7(d); Todman v. Todman, 15 V.I. 518, 571 F.2d 149 (3d Cir. 1978). This change in ownership status from tenants-by-the-entirety to tenants-in-common subjected the interest of each to attachment, levy, or sale by their respective judgment creditors. Since Gumbs is not the judgment creditor of the plaintiff, only the defend-

414

ant's interest in the property became subject to the execution sale on May 15, 1981, to satisfy the judgment. And because there has been no recordation of the judgment against the property subsequent to the divorce, 5 V.I.C. § 425 is totally inapplicable, and the general provisions regarding enforcement of judgments must be applied pursuant to 5 V.I.C. Ch. 43 (1967 & 1982 ed.).

Chapter 43 provides, among other things, the procedures to be applied with respect to execution against real property, exemption of homestead, levying on property, notice of sale, sale by auction, deadline for enforcement of execution, confirmation of sale, and redemption of real property. A detailed analysis of these provisions, as they relate to the enforcement of the District Court's judgment, convinces this court of the validity of the execution sale despite the invalidity of the judgment lien. Indeed, the District Court's order confirming the sale of defendant's interest in the property to Gumbs is ". . . a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons in any other action or proceeding whatever." 5 V.I.C. § 489(4).

 Accordingly, although the judgment lien is invalid, the execution sale is legal and enforceable.

## C. *Presumption of Interest of Tenant-In-Common*

 Despite the foregoing, plaintiff contends that the ownership of the property by her and the defendant as tenants-in-common after the divorce did not indicate what percentage of the title was owned by each. She, therefore, claims that based upon the equities of the case she is entitled to a 100% ownership of the property. In addressing this contention the court is guided by Modeste v. Benjamin, supra, and Sebold v. Sebold, 444 F.2d 864 (D.C. Cir. 1971), in which the interest of each divorced spouse is presumed to be an undivided one-half share. Although this presumption is subject to rebuttal, plaintiff was unsuccessful in her attempt to intervene in the District Court case and her motion to stay the enforcement of that judgment was denied by the District Court. Thus, no proof was submitted to rebut the presumption. Significantly, plaintiff did not appeal the order of denial, nor did she file a similar motion to stay with the court of appeals. The District Court, therefore, ordered the sale of the defendant's presumed one-half share of the property, and subsequently confirmed that sale on June 3, 1981.

These circumstances set the stage for the plaintiff's return to the Territorial Court on June 8, 1981, by the filing of the supplemental motion for summary judgment. But since the District Court had already acted, it is clear as stated above that principles of comity require our abstention under the circumstances. Obviously, the sale

of defendant's interest in the property precludes this court from taking from him that which he does not have.

Nevertheless, plaintiff places great reliance upon the affidavit of defendant which was submitted in support of the motion for summary judgment. She insists that despite any questions which may exist regarding the equities of the case, the affidavit is unequivocal in agreeing to give her full title to the property in lieu of alimony, that it eliminates any remaining issues of material fact, and that, therefore, she is entitled to sole ownership of the property as a matter of law.

The court disagrees with these contentions because the affidavit is both tardy and insufficient. It is tardy because it was filed subsequent to the sale of the property, and it is insufficient because it does not constitute a conveyance. Indeed, there is no claim by plaintiff nor defendant that any instrument of conveyance of the defendant's interest in the property to the plaintiff had been executed and recorded at the time of the execution sale. Thus, since it is undisputed that defendant had not conveyed his interest in the property, and since neither this court, the District Court, nor any other court of competent jurisdiction had altered the interests of the Creques from being that of equal, undivided shares, both the sale of defendant's interest and the confirmation of that sale are valid and of full force and effect.

D. *Homestead Exemption*

With respect to 5 V.I.C. § 478, which deals with exemption of the homestead from judicial sale, plaintiff argues that where homestead property is sold and the sale is confirmed, both the sale and the confirmation are invalid if the mandates of this section have not been satisfied. In substance, plaintiff alleges Gumbs' (1) premature enforcement of the judgment prior to any relinquishment by plaintiff of her rights to the homestead, and (2) lack of proof that the value of the homestead exceeded $30,000.00. I disagree. First, there is no legal requirement in this jurisdiction that a judgment creditor must await the relinquishment of rights by someone claiming a homestead exemption before enforcing a judgment. To the contrary, 5 V.I.C. Ch. 43 authorizes the sale of the homestead, so long as its value exceeds the maximum exemption of $30,000.00. Second, the question of valuation of the property is triggered only by the occupant's homestead declaration to the levying officer, who in turn notifies the judgment creditor of such a claim. There is no indication that any such declaration or notice was made by plaintiff. But even assuming such notification, it is apparent from the date of purchase, the purchase price, the current values, and the selling price of

$36,525.00 at the execution sale, that the valuation of defendant's one-half interest exceeded the limits of the exemption. It follows logically, therefore, that the valuation of plaintiff's one-half interest in the homestead must necessarily exceed $30,000.00, which is the maximum benefit that she is entitled to receive under the homestead exemption provision.[1] Thus, plaintiff's contentions are without merit.

## IV.

While the court is mindful of the emotional impact which the execution sale of a homestead places on the occupant, it is also cognizant of the detrimental impact on the administration of justice which would result if a judgment debtor is allowed to circumvent the law to the detriment of a bona fide judgment creditor. The court is also conscious of the possibility for collusion between the Creques, and while no such conclusion is being made, it is nevertheless apparent that the circumstances of this case present a favorable environment for the perpetration of fraud upon the judgment creditor. Where such a possibility exists, the court must be exceptionally vigilant in order to avoid a miscarriage of justice.

Moreover, it is apparent that plaintiff has attempted to accomplish indirectly through the Territorial Court that which she did not accomplish directly through the District Court, despite the fact that she did not appeal the District Court's denial of her motion to the U.S. Court of Appeals for the Third Circuit. This court is well aware of its limited authority and declines the invitation of plaintiff to contradict the decision of the District Court, however indirect that contradiction might be.

## V.

For the foregoing reasons, plaintiff's motion for summary judgment will be denied; her motion for modification of the divorce decree will be granted in part to reflect her fifty percent (50%) interest in the property; and the issue of alimony will continue to be reserved for future determination by this court or any other court of competent jurisdiction.

---

[1] The homestead provision was amended on April 10, 1979, to increase the exemption from $500.00 to $30,000.00, 5 V.I.C. § 478, but no change was made in the language that said it was only applicable to "any judgment hereafter obtained." Since Gumbs' judgment was obtained on October 17, 1978, prior to the amendment, it appears that the original limit of $500.00 might be applicable instead of the new limit of $30,000.00, even though the sale occurred on May 15, 1981. Questions as to whether the quoted phrase should be applied retroactively and which monetary limit is applicable in this case are issues which this court need not address at this time, since the valuation of plaintiff's interest in the property exceeds the maximum limit of both exemptions.